1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARMANDO HUERTA, individually
and as successor-in-interest to
Decedent, Roman Huerta; and
JESSICA DURAN, individually and as
successor-in-interest to Decedent,
Roman Huerta,

        Plaintiffs,

    v.

COUNTY OF SAN BERNARDINO;
and DOES 1 through 10, inclusive,

        Defendants.

**CASE NO. 5:25-cv-3591**

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)
3. First and Fourteenth Amendments, Interference with Familial Relationship (42 U.S.C. § 1983)
4. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)
5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)
6. Municipal Liability, Ratification (42 U.S.C. § 1983)
7. Battery (Wrongful Death and Survival)
8. Negligence (Wrongful Death and Survival)
9. Violation of Bane Act (Cal. Civil Code §52.1)

**DEMAND FOR JURY TRIAL**

1
**COMPLAINT FOR DAMAGES**

Plaintiffs ARMANDO HUERTA, individually and as successor-in-interest to Decedent, Roman Huerta, and JESSICA DURAN, individually and as successor-in-interest to Decedent, Roman Huerta, for their Complaint against Defendants COUNTY OF SAN BERNARDINO and DOES 1 through 10, inclusive (collectively, "Defendants"), hereby allege as follows:

## INTRODUCTION

1.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the death of Plaintiffs' son, Roman Huerta, while in the custody of the San Bernardino Sheriff's Department on February 24, 2025.

2.      Plaintiffs allege that the death of Roman Huerta was a result of Defendants DOE DEPUTIES' use of excessive force, their failure to timely provide reasonable medical care to Roman Huerta despite his serious medical condition after being subjected to such excessive force and while in Defendants' custody, Defendants' deliberate indifference to Roman Huerta's constitutional rights, and Defendants' negligence.

3.      The policies and customs behind uses of force against civilians such as Roman Huerta during detentions and arrests, and the failure to de-escalate the interaction and utilize less intrusive measures are fundamentally unconstitutional and have violated the civil rights of residents of the COUNTY, such as Plaintiffs and Roman Huerta. Accordingly, Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the death of Roman Huerta, and to challenge the unconstitutional policies and practices of the COUNTY.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments

of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and because, on information and belief, all Defendants reside in this district.

## PARTIES

6.   At all relevant times, Roman Huerta was an individual residing in the County of San Bernardino, California.

7.   Plaintiff ARMANDO HUERTA is an individual residing in the County of San Bernardino, California and is the natural father of Roman Huerta. ARMANDO HUERTA sues in his individual capacity as the father of Roman Huerta and a representative capacity as successor-in-interest to Roman Huerta pursuant to California Code of Civil Procedure § 377.60. ARMANDO HUERTA seeks both survival and wrongful death damages under federal and state law.

8.   Plaintiff JESSICA DURAN is an individual residing in the County of San Bernardino, California and is the natural mother of Roman Huerta. JESSICA DURAN sues in her individual capacity as the mother of Roman Huerta and a representative capacity as successor-in-interest to Roman Huerta pursuant to California Code of Civil Procedure § 377.60. JESSICA DURAN seeks both survival and wrongful death damages under federal and state law.

9.   At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino Sheriff's Department and its agents and employees. At all relevant

**COMPLAINT FOR DAMAGES**

times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of some or all of Defendant DOES 1-10.

10.    Defendants DOES 1-10 are sheriff's deputies for the COUNTY's Sheriff's Department ("DOE DEPUTIES").  At all relevant times, DOE DEPUTIES were acting under color of law within the course and scope of their duties as officers for the Sheriff's Department; and were acting with the complete authority and ratification of their principal, Defendant COUNTY.

11.    On information and belief, DOES 1-10 were residents of the County of San Bernardino, California at all relevant times.

12.    In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE DEPUTIES were acting on the implied and actual permission and consent of Defendant COUNTY.

13.    The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this compliant to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictiously named Defendants is responsible in some manner for the conduct or liabilities alleged herin.

14.    Defendants DOES 1-10 are sued in their individual capacities.

15.    At all times mentioned herein, each and every Defendadant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

16.    All of the acts complained of herein by Plaintiffs against Defendants, including DOES 1-10, were done and performed by said Defendants by and through

**COMPLAINT FOR DAMAGES**

1  their authorized agents, servants, and/or employees, all of whom at all relevant times

2  herein were acting with the course, purpose, and scope of said agency, service, and/or

3  employment capacity. Moreover, Defendants and their agents ratified all of the acts

4  complained herein.

5                    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

6         17.    Plaintiffs repeat and reallege each and every allegation in the foregoing

7  paragraphs of this Complaint with the same force and effect as if fully set forth

8  herein.

9         18.    On or about February 24, 2025, Roman Huerta was at a gas station in

10  Victorville, California, when sheriff's deputies for COUNTY, including one or more

11  of DOE DEPUTIES, were called to the gas station based on a reported disturbance.

12        19.    DOE DEPUTIES arrived and contacted Mr. Huerta. Outside of the

13  station, when Mr. Huerta moved away from DOE DEPUTIES, one or more of DOE

14  DEPUTIES deployed their taser against Mr. Huerta. On information and belief, this

15  caused him to suffer neuromuscular incapacitation and fall to the ground, and caused

16  him significant injury.

17        20.    On information and belief, Mr. Huerta was not armed with any weapon,

18  did not harm or reasonably appear to be attempting to harm DOE DEPUTIES or any

19  other person, did not make any verbal threats, had not committed any significant

20  crime, and did not significantly resist DOE DEPUTIES.

21        21.    On information and belief, prior to deploying the taser against Mr.

22  Huerta, DOE DEPUTIES did not issue appropriate commands to him or issue any

23  verbal warning that such force would be used.

24        22.    On information and belief, DOE DEPUTIES did not employ tactics to

25  de-escalate the situation, failed to give Mr. Huerta time and space to understand and

26  accept the presence of the deputies, failed to approach and speak to Mr. Huerta in a

27  non-threatening manner, failed to consider whether Mr. Huerta was able to

28  understand them, and failed to give Mr. Huerta the opportunity to consent to and

**COMPLAINT FOR DAMAGES**

1   cooperate with the instructions of the deputies in a manner he could understand.

2       23.    On information and belief, DOE DEPUTIES did not provide or summon

3   medical attention for Mr. Huerta upon him being tased and falling to the ground,

4   despite the risk, which DOE DEPUTIES knew or reasonably should have known, of

5   this causing cardiac arrest or other significant and potentially deadly medical

6   complications.

7       24.    DOE DEPUTIES then forcibly placed Mr. Huerta into a sheriff's vehicle

8   and, on information and belief, struck him and used additional significant force

9   against him prior to and during this process.

10      25.    On information and belief, after DOE DEPUTIES tased and used

11  additional force against Mr. Huerta, causing him significant and life-threatening

12  injuries, DOE DEPUTIES delayed in obtaining critical medical care for Mr. Huerta

13  for at least several minutes, without any legitimate justification.

14      26.    Ultimately, with Mr. Huerta in the sheriff's vehicle, DOE DEPUTIES

15  transported him to a hospital. On information and belief, DOE DEPUTIES subjected

16  Mr. Huerta to a "rough ride," during which they caused Mr. Huerta further injury by

17  intentionally or negligently driving in an unsafe manner.

18      27.    Once at the hospital, on information and belief, DOE DEPUTIES used

19  additional force against Mr. Huerta prior to or during the process of bringing him

20  inside, and further delayed his access to urgently needed medical attention.

21      28.    On information and belief, Mr. Huerta died at the hospital as a result of

22  the injuries he sustained from the above-described uses of force by DOE DEPUTIES,

23  including the tasing.

24      29.    Mr. Huerta was seated in his vehicle and did not pose an immediate

25  threat to anyone at the time DOE DEPUTIES used the above-described force against

26  him. On information and belief, DOE DEPUTIES had alternate means of neutralizing

27  and/or effectuating the seizure of Mr. Huerta available, including through any of a

28  variety of readily available and less intrusive means or strategies. The force used by

the Defendants DOE DEPUTIES, was unnecessary, excessive, and unreasonable under the totality of the circumstances.

30.    Mr. Huerta died as a result of his injuries caused by DOE DEPUTIES.

31.    Plaintiffs ARMANDO HUERTA and JESSICA DURAN are Mr. Huerta's successors in interest as defined in Section 377.11 of the Califoria Code of Civil Procedure and succeed to Mr. Huerta's interest in this action as the natural father and mother of Mr. Huerta, respectively. At the time of his death, Mr. Huerta was unmarried and had no children.

32.    On or around August 19, 2025, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to the applicable sections of the California Government Code. Said claims were denied on August 26, 2025.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)
### (Plaintiffs against Defendants DOES 1-10)

33.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

34.    The unreasonable use of force by Defendants DOE DEPUTIES deprived Mr. Huerta of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35.    As a result, Mr. Huerta suffered extreme pain and suffering and eventually suffered a loss of life. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral expenses.

36.    As a result of the conduct of Defendants DOE DEPUTIES, they are

liable for Mr. Huerta's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

37.    This use of deadly force was excessive and unreasonable under the circumstances, especially since Mr. Huerta never attempted to physically injure DOE DEPUTIES or anyone else prior to their uses of force against him. Further, Mr. Huerta never verbally threatened anyone and never pointed a weapon at DOE DEPUTIES or anyone else. Mr. Huerta did not pose an immediate threat of harm to anyone at the time of DOE DEPUTIES' uses of force against him. Defendants' actions thus deprived Mr. Huerta of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

38.    The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Huerta and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES.

39.    As a direct and proximate result of the wrongful death of Mr. Huerta, Plaintiffs suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Mr. Huerta. Accordingly, DOE DEPUTIES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

40.    Plaintiffs also bring this claim as successors-in-interest to the Mr. Huerta and seek both survival and wrongful death damages for the violation of Mr. Huerta's rights.

41.    Plaintiffs also seek attorney's fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment - Denial of Medical Care (42 U.S.C. § 1983)

### (Plaintiffs against Defendants DOES 1-10)

42.    Plaintiffs repeat and reallege each and every allegation in the foregoing

paragraphs of this Complaint with the same force and effect as if fully set forth herein.

43.     The denial of medical care by Defendants DOE DEPUTIES deprived Mr. Huerta of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Huerta under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

44.     As a result, Mr. Huerta suffered extreme mental and physical pain and eventually suffered a loss of life and earning capacity. Plaintiffs have also been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

45.     Defendants DOE DEPUTIES knew that failure to provide timely medical treatment to Mr. Huerta could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Mr. Huerta's death.

46.     The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Huerta and therefore warrants the imposition of exemplary and punitive damages as to Defendant DOE DEPUTIES.

47.     Plaintiffs also bring this claim as successors-in-interest to the Mr. Huerta and seek both survival and wrongful death damages for the violation of Mr. Huerta's rights.

48.     Plaintiffs also seek attorney's fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**First and Fourteenth Amendments – Interference with Familial Relationship**

**(42 U.S.C. § 1983)**

**(Plaintiffs against Defendants DOES 1-10)**

49.      Plaintiffs repeat and reallege each and every allegation in the foregoing

**COMPLAINT FOR DAMAGES**

paragraphs of this Complaint with the same force and effect as if fully set forth herein.

50.    Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their son, Mr. Huerta. Plaintiffs also had a cognizable interest under the First Amendment to the United States Constitution to be free from state actions that unreasonably interfere with their familial relationship and association with their son, Mr. Huerta.

51.    As a result of the excessive force by Defendant DOE DEPUTIES, Mr. Huerta died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with Mr. Huerta.

52.    The aforementioned actions of DOE DEPUTIES, along with any undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the Mr. Huerta and Plaintiffs and with purpose to harm unrelated to any legitimate law enforcement objective.

53.    Defendant DOE DEPUTIES, acting under color of state law, thus violated the First and Fourteenth Amendment rights of Plaintiffs to be free from unwarranted inferference with their familial relationship and right of association with Mr. Huerta.

54.    As a direct and proximate cause of the actions of DOE DEPUTIES, Plaintiffs have suffered emotionally and have been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

55.    As a result of the conduct of DOE DEPUTIES, they are liable for Mr. Huerta's and Plaintiffs' injuries because they were integral participants in the denial

**COMPLAINT FOR DAMAGES**

1  of due process and free association rights.

2      56.    The conduct of DOE DEPUTIES was willful, wanton, malicious, and

3  done with reckless disregard for the rights and safety of Mr. Huerta and for the

4  rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive

5  damages as to Defendants DOE DEPUTIES.

6      57.    Plaintiffs bring this claim individually and seek individual and

7  wrongful death damages under this claim for the interference with Plaintiffs'

8  familial relationship and right of association with Mr. Huerta.

9      58.    Plaintiffs also seek attorney's fees and costs under this claim.

10                      **FOURTH CLAIM FOR RELIEF**

11  **Muncipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

12                  **(Plaintiffs against Defendant COUNTY)**

13      59.    Plaintiffs repeat and reallege each and every allegation in the foregoing

14  paragraphs of this Complaint with the same force and effect as if fully set forth

15  herein.

16      60.    On information and belief, the COUNTY made a formal decision that

17  DOE DEPUTIES' killing of Mr. Huerta was found to be "within policy" of the

18  COUNTY's Sheriff's Department protocols, notwithstanding that Mr. Huerta was not

19  an imminent threat to DOE DEPUTIES when they used force against him resulting in

20  his death. This manifests a deliberate indifference to the civil rights of the residents

21  of the COUNTY.

22      61.    On information and Defendant COUNTY and COUNTY executives

23  ratified, acquiesced, and condoned the fatal use of force against Mr. Huerta by DOE

24  DEPUTIES.

25      62.    On information and belief, DOE DEPUTIES, were not disciplined, and

26  were not given additional training, after the killing of Mr. Huerta, which evidences

27  ratification and acquiescence in the killing of Mr. Huerta by DOE DEPUTIES.

28

63.     On and for some time prior to February 24, 2025, and continuing to the present date, Defendant COUNTY deprived Mr. Huerta and Plaintiffs of the rights and liberties secured to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution, because COUNTY and its supervising and managerial employees, acted with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and Mr. Huerta, and of persons in their class, situation and comparable position in particularly, knowingly maintained, enforced, and applied an official recognized custom, policy, and practice of:

   a. Employing and retaining as sheriff's deputies and other personnel, including DOE DEPUTIES, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities of abusing their authority and for mistreating citizens by failing to follow written COUNTY Sheriff's Department policies.

   b. Inadequately supervising, training, controlling, assigning, and disciplining COUNTY's sheriff's deputies, and other personnel, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

   c. Failing to adequately train sheriff's deputies, including DOE DEPUTIES, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

   d. Having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which is also demonstrated by inadequate training regarding these subjects;

   e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining the intentional misconduct of Defendant COUNTY sheriff's deputies, such as DOE DEPUTIES;

**COMPLAINT FOR DAMAGES**

f. Failing to discipline COUNTY sheriff's deputies, such as DOE DEPUTIES, for conduct such as excessive use of force;

g. Ratifying the misconduct of Defendant COUNTY sheriff's deputies, such as DOE DEPUTIES, for conduct such as excessive use of force;

h. Failing to properly investigate incidents of excessive use of deadly force by Defendant COUNTY sheriff's deputies, such as DOE DEPUTIES.

79.   On information and belief, it is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of previous incidents of excessive use of deadly force, and improper denial of medical care, and instead, to officially claim that such incidents are justified and proper.

80.   The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies such as DOE DEPUTIES, to believe that excessive use of deadly force, and improper denial of medical care are permissible and will be permitted by Defendant COUNTY. Defendants DOE DEPUTIES were aware of the policies, customs, and practices of Defendants COUNTY and DOE DEPUTIES used excessive force against Mr. Huerta. These policies and customs of the COUNTY were the driving force that caused DOE DEPUTIES to kill Mr. Huerta.

81.   Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the COUNTY sheriff's deputies, such as DOE DEPUTIES, that Defendant COUNTY was aware of, and has condoned and ratified include:

a. Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;

b. Preparation of investigative reports which uncritically rely solely on the word of sheriff's deputies involved in the assault, battery, excessive use of force incidents and which systematically fail to credit testimony by non-police witnesses;

      c. Issuance of public statements exonerating deputies involved in such incidents prior to the completion of investigations of the excessive use of force;

      d. Failure to objectively and independently review investigative reports by responsible superior deputies for accuracy or completeness and acceptance of conclusions which are unwarranted by the evidence of the wrongful shooting, assault, excessive use of deadly force, or which contradict such evidence.

82.    By reason of the aforementioned policies and practices of Defendant COUNTY, Mr. Huerta was severely injured and subjected to pain and suffering and lost his life.

83.    Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, COUNTY condoned, tolerated and through actions and inactions thereby ratified such policies. COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Huerta, and other individuals similarly situated.

84.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY acted with an intentional, reckless, and callous disregard for the rights and the life of Mr. Huerta, and Mr. Huerta's and Plaintiffs' constitutional rights.

85.    The following are only a few examples of cases where County of San Bernardino sheriff's deputies used excessive deadly force and were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY

routinely ratifies such behavior, fails to properly train its deputies, and maintains a practice of allowing such behavior:

a. In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

b. In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

c. In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

d. In *Arrona, et al. v. County of San Bernardino et al.*, Case No. 5:21-cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino

**COMPLAINT FOR DAMAGES**

County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

e. In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

f. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

g. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy.

i. In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was

16

**COMPLAINT FOR DAMAGES**

excessive and unreasonable.  In 2018, the parties settled the case for a seven-figure settlement.

j.  In *Young v. County of San Bernardino*, Case No. 5:15-cv-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

k.  Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 U.S.C. § 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

86.  Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY were affirmatively linked to and were significantly influential forces behind the injuries of Mr. Huerta and Plaintiffs.

87.  By reason of the aforementioned acts and omissions of Defendant COUNTY, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support of Mr. Huerta.

88. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

89. Plaintiffs bring this claim individually and as successors in interest to Mr. Huerta and seek both survival and wrongful death damages under this claim. Plaintiffs are also claiming funeral expenses.

90. Plaintiffs also seek statutory attorney fees and costs under this claim.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**(Plaintiffs against Defendant COUNTY)**

91. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92. Defendants DOE DEPUTIES acted under color of law. The acts of said Defendants deprived Mr. Huerta and Plaintiffs of their particular rights under the United States Constitution.

93. The training policies of Defendant COUNTY were not adequate to train its sheriff's deputies to handle the usual and recurring situations with which they must deal.

94. Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

95. The negligent and unjustified use of force by the said Defendants DOE DEPUTIES was a result of the negligent training by the Defendant COUNTY, who failed to train COUNTY deputies as to proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. COUNTY was responsible for the training of COUNTY deputies to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

96.    COUNTY negligently failed to train COUNTY deputies to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of COUNTY were not adequate to train its sheriff's deputies to handle the usual and recurring situations with residents that said Defendants have contact with.

97.    The training policies of the COUNTY were deficient in the following ways:

  a.  The COUNTY failed to properly train COUNTY sheriff's deputies, so that deputies do not escalate their interactions with members of the public and do not overreact and resort to use of force when the use of force was not necessary.

  b.  The COUNTY failed to properly train COUNTY sheriff's deputies in proper police tactics, such as situational awareness so that deputies do not utilize negligent tactics. Because of this lack of proper training by the COUNTY, DOE DEPUTIES did not use proper police tactics in handling of the contact with Mr. Huerta, and instead used defective police tactics, including the lack of a situational awareness by the said Defendants. These defective tactics resulted in the death of Mr. Huerta.

  c.  The COUNTY failed to properly train COUNTY sheriff's deputies in the use of effective communication prior to using force. Because of the lack of proper training by the COUNTY, DOE DEPUTIES did not use effective communication prior to and during the use of force against Mr. Huerta. The ineffective communication of information by said Defendants prior to, and during the incident, resulted in the death of Mr. Huerta.

98.    The failure of Defendant COUNTY to provide adequate training caused the deprivation of Mr. Huerta's and Plaintiffs' rights by Defendants; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of the Mr. Huerta's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

99.    The following are only a few examples of continued conduct by sheriff's deputies working for the COUNTY, which indicate the COUNTY's failure to properly train its sheriff's deputies:

a.    In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

b.    In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

c.    In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or

vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

d. In *Arrona, et al. v. County of San Bernardino et al*., Case No. 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

e. In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

f. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

g. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's

1      deputy used deadly force against the unarmed Nathanael Pickett when

2      he posed no immediate threat. The jury in that case returned a $33.5

3      million verdict against Defendant County of San Bernardino and its

4      involved deputy.

5      i.   In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532-

6         R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was

7         excessive and unreasonable.  In 2018, the parties settled the case for a

8         seven-figure settlement.

9      j.   In *Young v. County of San Bernardino*, Case No. 5:15-cv-01102-JGB-

10        SP, Plaintiff argued that the 2014 shooting of Keivon Young was

11        excessive and unreasonable.  In 2016 a jury agreed and awarded a high

12        six-figure verdict in Plaintiff's favor.

13      k.   Numerous prior incidents at County San Bernardino detention centers

14        also support Plaintiffs' claims for Municipal Liability in this case. For

15        example, between 2014 and 2016, thirty-three County inmates filed

16        lawsuits alleging torture by the County and its deputies involving

17        violations of 42 U.S.C. § 1983. (Case Nos. 5:15-cv-02515-JGB-DTB)

18        Johnny Alcala and 14 other inmates sued the County, and David Smith

19        filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of

20        torture by County correctional officers. Moreover, the ACLU also

21        brought a class action lawsuit alleging unconstitutional practice of

22        LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP).

23        The ACLU's lawsuit addressed the trouble of WVDC in denying

24        services in unconstitutional manner, including failure to make safety

25        checks as mandated by Title 15, and the suit represented approximately

26        600 individuals.

27     100.   By reason of the aforementioned acts and omissions of Defendants,

28 Plaintiffs were caused to incur funeral and related burial expenses.

101. By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Huerta.

102. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

103. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival and wrongful death damages under this claim.

104. Plaintiffs also seek statutory attorney fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### (Plaintiffs against Defendant COUNTY)

105. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

106. Defendants DOE DEPUTIES acted under color of law.

107. The acts of Defendants DOE DEPUTIES deprived Mr. Huerta and Plaintiffs of their particular rights under the United States Constitution.

108. On information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DOE DEPUTIES, ratified DOE DEPUTIES' acts and the bases for them. The final policymaker knew of and specifically approved of DOE DEPUTIES' acts.

109. On information and belief, a final policymaker has determined that the acts of Defendants DOE DEPUTIES were "within policy."

110. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Huerta. The aforementioned acts and omissions also caused Mr. Huerta's pain and suffering, loss of enjoyment of life, and death.

**COMPLAINT FOR DAMAGES**

111.   Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

112.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs are also claiming funeral expenses.

113.   Plaintiffs also seek attorney's fees and costs under this claim.

### SEVENTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**(Plaintiffs against all Defendants)**

114.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

115.   Defendant DOE DEPUTIES, while working as sheriff's deputies for the COUNTY and acting within the course and scope of their duties, intentionally used force against Mr. Huerta, including tasing him. Defendants DOE DEPUTIES had no legal justification for using such force against Mr. Huerta, and said Defendants' uses of force while carrying out their duties were unreasonable, especially since Mr. Huerta was not an imminent threat to DOE DEPUTIES or anyone else. The uses of force were also unreasonable because there were less intrusive options readily available.

116.   As a result of the actions of DOE DEPUTIES, Mr. Huerta suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from his injuries and lost learning capacity.

117.   COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within

the scope of the employment if the employee's act would subject him or her to liability.

118.   The conduct of DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Huerta, entitling Plaintiffs, individually and/or as successor-in-interest to Mr. Huerta, to an award of exemplary and punitive damages. Plaintiffs are also claiming funeral expenses.

119.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**(Plaintiffs against all Defendants)**

120.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

121.    The actions and inactions of Defendants were negligent, including but not limited to:

a. The failure to properly and adequately train employees including DOE DEPUTIES with regard to the use of force, including deadly force;

b. The failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force, against Mr. Huerta;

c. The negligent tactics and handling of the situation with Mr. Huerta, including pre-force negligence;

d. The negligent detention, arrest, and use of force, including deadly force, against Mr. Huerta;

**COMPLAINT FOR DAMAGES**

e.  The negligent failure to provide and or summon prompt medical care to Mr. Huerta;

f.  The failure to give a verbal warning or appropriate commands prior to using force;

g.  And failure to properly train and supervise employees, including DOE DEPUTIES.

122.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Huerta suffered extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

123.   COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

124.   Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

### NINTH CLAIM FOR RELIEF

### Violation of Bane Act (Cal. Civil Code § 52.1)

### (Plaintiffs against all Defendants)

125.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

126.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (including by the use of unconstitutionally excessive force).

127.   Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

128.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force, wrongful detention and arrest, and denial of medical care by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. Defendants DOE DEPUTIES violated Mr. Huerta's and Plaintiffs' constitutional rights by using excessive force against Mr. Huerta, denying Mr. Huerta medical care, and interfering with the relationships between Plaintiffs and Mr. Huerta, all of which acts were done intentionally and with a reckless disregard for Mr. Huerta's and Plaintiffs' constitutional rights.

129.   Defendant DOE DEPUTIES' use of deadly force was excessive and unreasonable under the circumstances. Further, the involved deputies did not give a verbal warning or adequate commands prior to fatally using force against Mr. Huerta, despite being feasible to do so. The conduct of Defendant DOE DEPUTIES was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Huerta and Plaintiffs.

130.    Defendants DOE DEPUTIES intentionally violated Mr. Huerta's constitutional rights by using excessive force against Mr. Huerta. Further, these acts by DOE DEPUTIES demonstrate that they had a reckless disregard for Mr. Huerta'S constitutional rights.

131.    At the time of the use of force against Mr. Huerta, Mr. Huerta did not pose an immediate threat of death or serious bodily injury and never verbally threatened anyone prior to the use of force. There is direct and circumstantial evidence that DOE DEPUTIES intentionally violated Mr. Huerta's rights by fatally subjecting him to force.

132.    Defendant DOE DEPUTIES, while working as sheriff's deputies for the COUNTY, and acting within the course and cope of their duties, interfered with or attempted to interfere with the rights of Mr. Huerta to be free from excessive force and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

133.    Mr. Huerta was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also claim funeral and burial expenses.

134.    The conduct of DOE DEPUTIES was a substantial factor in causing the harm, losses, injuries and damages of Mr. Huerta and Plaintiffs.

135.    Defendant COUNTY is vicariously liable for the wrongful acts of DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

136.    The conduct of DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Huerta entitling Plaintiffs to an award of exemplary and punitive damages.

137.    Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek compensatory and survival damages, including for his pre-death pain and suffering, under this claim.

138.    Plaintiffs also seek costs and attorney fees under this claim.

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ARMANDO HUERTA and JESSICA DURAN request entry of judgment in their favor and against Defendants COUNTY OF SAN BERNARDINO and DOES 1-10, inclusive, as follows:

A.   For compensatory damages, including both survival and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.   For other general damages in an amount according to proof at trial;

C.   For other non-economic damages in an amount according to proof at trial;

D.   For other special damages in an amount according to proof at trial;

E.   For treble damages pursuant to Cal. Civ. Code § 52.1;

F.   For punitive damages against the individual defendants in an amount to be proven at trial;

G.   Attorney's fees pursuant to 42 U.S.C. § 1988;

H.   Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(i);

I.   For interest;

J.   For reasonable costs of this suit; and

K.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED: December 30, 2025          **LAW OFFICES OF DALE K. GALIPO**


By:   */s/ Dale K. Galipo*
      DALE K. GALIPO
      BENJAMIN S. LEVINE
      Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiffs named herein hereby demand a trial by jury.


DATED: December 30, 2025          **LAW OFFICES OF DALE K. GALIPO**


                                   By:      */s/ Dale K. Galipo*
                                          DALE K. GALIPO
                                          BENJAMIN S. LEVINE
                                          Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**