**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO HUERTA, individually and as successor-in-interest to Decedent, Roman Huerta; and JESSICA DURAN, individually and as successor-in-interest to Decedent, Roman Huerta,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:25-cv-03591-JGB-SP<br><br>*Hon. Jesus G. Bernal*<br>*Hon. Mag. Judge Sheri Pym*<br><br>**JOINT RULE 26(f) REPORT**<br><br>Scheduling Conference:<br>Date:   April 13, 2026<br>Time:  11:00 a.m.<br>Crtrm: 1<br><br>**Complaint (with Demand for Jury Trial) Filed**: December 30, 2025<br>**Responsive Pleading Filed**: February 13, 2026<br>**Trial (Proposed)**: August 17, 2027 |

**TO THE HONORABLE COURT:**

Pursuant to Federal Rules of Civil Procedure Rule 26(f), Local Rule 16-1, and the Court's March 11, 2026, Order Setting Scheduling Conference [Dkt. 13], the early meeting of counsel has been conducted between counsel for Plaintiffs and counsel for Defendant County of San Bernardino. The early meeting of counsel took place via telephone on March 20, 2026, and was attended by Benjamin Levine of the Law Offices of Dale K. Galipo, counsel for Plaintiffs, and Michelle Prescott of Wesierski & Zurek LLP, counsel for Defendant.

The parties have discussed the nature and basis of their claims and defenses, the potential for resolving the case, the timing of initial disclosures, and a proposed discovery plan. The parties, through their counsel, respectfully submit the following Joint Report.

**(a)** **Statement of the Case**

<u>Plaintiffs' Summary</u>: Plaintiffs allege that, on February 24, 2025, Plaintiffs' decedent, Roman Huerta ("Decedent"), was at a gas station in Victorville when sheriff's deputies for the County were called there based on a reported disturbance. Plaintiffs further allege that there, deputies contacted Decedent and, when Decedent moved away from the deputies outside of the station, one or more deputies deployed their taser against him, injuring him. Plaintiffs further allege that the deputies then placed Decedent into a sheriff's vehicle, using additional force against him, and delayed his access to medical care before ultimately transporting him to a hospital, where Decedent died as a result of his injuries.

As a result of these allegations, Plaintiffs bring causes of action under 42 U.S.C. § 1983 against the individual deputy Defendants, whose names are currently unknown to Plaintiffs and who are identified in Plaintiffs' Complaint as Does, for excessive force, denial of medical care, and interference with familial relationship. Plaintiffs also bring *Monell* claims against Defendant County of San Bernardino for unconstitutional custom, practice, or policy, failure to train, and ratification.

Plaintiffs also bring causes of action under state law against all Defendants for battery, negligence, and violation of the Bane Act, Cal. Civ. Code § 52.1.

The named Defendant County of San Bernardino has been served and has answered the operative complaint.

Defendant's Summary:

On Monday, February 24, 2025, San Bernardino County Sheriff Deputy Corrin Cassidy ("Cassidy") responded to a Chevron gas station/Rocket convenience store, located at 12905 Hesperia Road, in Victorville for a battery investigation. The call for service was made by the store clerk of the gas station, who reported that a man came inside the station and asked to call 911 because he had been punched in the face. The man identified himself as Roman Legion to the store clerk, but later identified himself to Cassidy as Roman Huerta. Cassidy arrived at the scene at approximately at about 12:41 a.m.

Cassidy contacted Huerta, age 28, in the gas station's parking lot. Her BWC show the two having a calm conversations, including Cassidy asking Huerta if he needs medication attention/wants to be transferred to the hospital, as well as asking him basic information including his name, where he lives etc.

Cassidy retreated to her patrol vehicle to run Huerta's information on her MDC, and while doing so, Huerta attempted to enter the back seat of the vehicle on the passenger side.

Cassidy then exited the patrol vehicle to detain Huerta, who was now walking away from the patrol vehicle and walking toward the entrance of the Rocket convenience store. As Cassidy got closer to Huerta, he began to run. Cassidy catches up to Huerta as he is entering the store and grabs the back of his sweatshirt in an attempt to pull him closer, so that she can handcuff him. Huerta stops running and complies with Cassidy's demand to put his hands behind his back. As Cassidy is attempting to handcuff Huerta, he breaks free of her hold, and a struggle ensues as Cassidy attempts to regain Huerta's compliance. Huerta begins to flee toward the door,

the clerk, also tries to grab him/stop him from fleeing. At that point, Cassidy utilized her rapid containment baton (RCB) and struck Huerta. Huerta continues to flee, exists the store, and runs in the nearby intersection of Hesperia Road and Nisqualli Road.

As Cassidy is pursuing Huerta on foot, she gives him multiple verbal command to "stop," and "stop now." When Huerta reaches the middle of the intersection he stops running, and Cassidy gives him at least two verbal commands to "get on the ground," before deploying her taser.  The first taser deployment is ineffective, which caused Cassidy to deploy her taser a second time. Prior to the second taser deployment, Cassidy verbally instructed Huerta to "get on the ground" at least five (5) times. The second deployment was effective and incapacitated Huerta. Huerta was handcuffed to the rear and placed in the rear secured portion of a patrol vehicle.

Huerta was placed under arrest, and Huerta was transported to Victor Valley Global Medical Center (VVGMC) for pre-booking medical treatment. Huerta walked on his own from the middle of the intersection to Cassidy's police car, but once they reached the vehicle, he again began to attempt to break free from Cassidy's hold. AMR was at the scene at this point—the AMR vehicle can be seen on the BWC footage, and four (4) additional sheriff deputies arrive.

Once at Victor Valley Global Center emergency department ("ED"), it takes four (4) deputies to move Huerta from the vehicle to inside the ED. He is screaming and flailing his arms and body, and ultimately, he is placed on a wheel chair and wheeled inside. While at the ED, Huerta reported that he uses methamphetamine, and he had last used them, "today." The emergency medical staff reported that Huerta was combative and erratic, shouting and only answering simple questions. He refused to all nurses to take his vitals. Once inside, Huerta thrusts himself off the wheelchair and is seen screaming and flailing on the floor for more than five (5) minutes. Deputies attempt to restrain him. Huerta then goes silent, and the deputies realize he is not breathing and begin CPR and compressions.

The patient was suspected of a possible PCP overdose. A cardiac monitor was

applied, and the pulse check revealed asystole on the monitor (i.e. a failing heart/"flatline"). An endotracheal tube (ET tube) was successfully placed. CPR was immediately resumed. At 0147, the first dose of epinephrine was administered. Sodium, bicarbonate, and calcium were administered.

Two doses of epinephrine were given, and pulses were checked multiple times with continued asystole on the monitor. Blood and urine samples were collected for further analysis. A third dose of epinephrine was administered, and a pulse check, again, showed asystole on the monitor. At 01:54 a.m. Doctor Jamal Mustafa pronounced Huerta deceased.

**(b)** **Subject Matter Jurisdiction**

Plaintiffs have filed federal claims pursuant to 42 U.S.C. § 1983. Accordingly, the parties do not dispute that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and over Plaintiffs' claims under state law pursuant to 28 U.S.C. § 1367, as those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

**(c)** **Legal Issues**

1. Whether the individual Defendants used excessive force against Decedent;

2. Whether the individual Defendants denied timely medical care to Decedent;

3. Whether the individual Defendants unlawfully interfered with Plaintiffs' familial relationships with Decedent;

4. Whether the County of San Bernardino maintained one or more unlawful customs, practices, or policies that were a moving force behind the constitutional violation(s) alleged;

5. Whether the County of San Bernardino improperly failed to train its deputies, and whether that failure to train was a moving force behind the constitutional violation(s) alleged;

6. Whether one or more County of San Bernardino officials who possessed final policymaking authority ratified the individual Defendants' actions and the reasons for them;

7. Whether the individual Defendants committed battery against Decedent;

8. Whether the individual Defendants were negligent toward Decedent;

9. Whether the individual Defendants intended the constitutional violation(s) alleged;

10. The nature and scope of Plaintiffs' damages;

11. Whether Plaintiffs are entitled to punitive damages; and

12. Whether the Defendant Deputies are entitled to qualified immunity.

**(d)     Parties, Evidence, etc.**

*Parties*: The parties are Plaintiffs Armando Huerta and Jessica Duran, and Defendants County of San Bernardino and Does 1-10.

*Witnesses*: The percipient witnesses include the County of San Bernardino Sheriff's Department officials and personnel present at the scene of the incident, medical professionals who attended to Decedent, and other possible civilian witnesses. Additional non-percipient witnesses may include expert witnesses and witnesses on Plaintiffs' damages. Given that discovery has not yet been completed, the parties have not yet identified all other witnesses.

*Key Documents Plaintiffs May Use*: The key documents will include County of San Bernardino Sheriff's Department records regarding the incident, including but not limited to, statements, reports, audio and/or video of the incident, and photographic evidence. Additional documents may include depositions of the parties and witnesses, and responses to written discovery.

*Key Documents Defendant May Use*: County of San Bernardino Sheriff's Department records regarding the incident, including but not limited to, statements, reports, audio and/or video of the incident, and photographic evidence, the coroner's

report, autopsy records (if any), medical records for the decedent, written discovery and document production, depositions of the parties and witnesses.

**(e)    Damages**

Plaintiffs claim general and special compensatory damages, according to proof at trial under federal and state law for their individual damages for the wrongful death of Decedent, and Decedent's survival damages, including his pre-death pain and suffering, loss of enjoyment of life, and loss of life. Plaintiffs also seek punitive and exemplary damages against the individual Defendants only. Plaintiffs also seek attorney's fees pursuant to 42 U.S.C. § 1988 and under state law, costs and interests incurred.

**(f)    Insurance**

Defendant is self-insured under the Government Code.  See, California Government Code § 989 et seq.

**(g)    Motions (Procedural)**

There are no pending motions. Plaintiffs anticipate filing either a stipulation to name the currently unidentified individual deputies who are alleged to have liability, currently named in the Complaint as Doe defendants, once such identities become available through initial discovery, or a motion to amend if a stipulation cannot be reached. Plaintiffs are hopeful that such amendment may be accomplished through stipulation. Aside from this, the parties do not anticipate bringing any motions to amend the pleadings, add parties or claims or transfer venue. The parties expect to file discovery motions as needed or to seek assistance from the Magistrate Judge via informal discovery conference.

Defendant does not anticipate the filing of any non-dispositive motions at the present time.

**(h)    Manual for Complex Litigation**

The parties agree that this is not a complex case and is therefore not subject to

the Manual for Complex Litigation.

### (i)    Status of Discovery

Pursuant to Federal Rules of Civil Procedure Rule 26(a)(1)(c), the parties agree to exchange initial disclosures on or before April 3, 2026. As of the time of the drafting of this report, written discovery requests have not yet been propounded and deposition dates have not yet been set.

### (j)    Discovery Plan

The parties have discussed the anticipated discovery and propose a discovery schedule set forth in "Exhibit A" attached hereto. This schedule was compiled based upon the trial calendars of counsel and their evaluation of the parties' discovery needs.

Plaintiffs anticipate serving written discovery regarding County records regarding the incident and taking the depositions of County personnel who were involved in the detention of, use of force against, and arrest of Decedent. Plaintiffs may also depose medical personnel who provided medical attention to Decedent. Plaintiffs also plan to retain experts who will opine on, and potentially testify to, issues of liability, causation, and damages. Plaintiffs anticipate serving written interrogatories, requests for admission, and requests for production of documents.

Defendants anticipate serving written discovery and taking Plaintiffs' deposition regarding Plaintiffs' claimed damages.  Defendant also anticipates taking depositions of witnesses, including healthcare providers and other percipient witnesses regarding the incident and the Decedent's cause of death and other medical history. Defendant anticipates the need to retain an expert on police practices, causation, and damages. Defendant anticipates serving written interrogatories, requests for admission, and requests for production of documents.

The parties will also take the depositions of any experts or witnesses identified by the other.

The parties do not see any issues regarding electronically stored information

JOINT RULE 26(f) REPORT

pursuant to Rule 26(f)(3)(C) in this case.

The parties do not anticipate any changes to the limitations on discovery imposed by the Federal Rules at this time, except that Plaintiffs may seek a stipulation or leave to depose more witnesses than the 10 allowed under the Federal Rules, if Plaintiffs learn through discovery that there were more County personnel who were present during relevant events and may be material witnesses than Plaintiffs would otherwise be able to depose.

**(k)** **Discovery Cut-off**

The parties propose a cut-off for all discovery (fact and expert) of May 21, 2027, which is also as set forth in Exhibit A hereto.

**(l)** **Expert Discovery**

The parties have discussed expert discovery and propose exchange dates of: Initial Expert Disclosure on April 16, 2027; and Rebuttal Expert Disclosure on May 7, 2027. These dates are also set forth in Exhibit A attached hereto.

The parties will simultaneously exchange their expert reports.

**(m)** **Dispositive Motions**

The parties have discussed potential motions and propose a deadline of June 28, 2027, to hear dispositive motions. This proposed date is also set forth in Exhibit A attached hereto.

After a period of discovery, Plaintiffs may bring a motion for summary judgment or adjudication on one or more claims as appropriate. If such a motion is brought, Plaintiffs will adhere to the Court's requirements for motions for summary judgment.

Defendant anticipates filing a Motion for Summary Judgment pending their fact investigation.

The parties agree and request that for any motion made pursuant to F.R.C.P. 56, the opposing party shall have two weeks to prepare and file their opposition papers and that the moving party shall have two weeks to prepare and file their reply

papers.

The parties further anticipate bringing motions *in limine* based on the claims and damages remaining at trial, but are unable to identify the specific subjects of such motions at this early stage.

**(n)    Settlement Conference / Alternative Dispute Resolution (ADR)**

a.    *Prior Discussions*

The parties have not had substantive settlement discussions. The parties are amenable to engaging in initial settlement discussions following a period of discovery.

b.    *ADR Selection*

The parties are agreeable to participating in ADR Procedure No. 2 (appearance before neutral selected from Court's Mediation Panel). If mediation is unsuccessful, the parties are also amenable to participating in a Settlement Conference before a Magistrate Judge.

**(o)    Trial**

a.    *Proposed Trial Date*

The parties propose a trial start date of August 17, 2027. This date reflects the anticipated scope of fact discovery; the need for expert discovery; the potential for the filing, hearing, and resolution of dispositive motions filed by one or both parties; and lead trial counsel's current trial calendars for early and mid 2027.

b.    *Time Estimate*

The parties estimate the trial will take approximately five to seven court days. This estimate reflects the anticipated need for testimony from the parties, percipient witnesses, and one or more experts for each side.

c.    *Jury or Court Trial*

The parties request a trial by jury.

d.    *Magistrate Judge*

The parties are not requesting to try the case before a magistrate judge.

**(p)    Trial Counsel**

Dale K. Galipo will be lead trial counsel for Plaintiffs. Christopher Wesierski will be lead trial counsel for Defendant.

**(q)    Independent Expert or Master**

The parties agree that this case does not require an independent expert or master.

**(r)    Timetable**

The required Schedule of Pretrial and Trial Dates Worksheet is attached hereto as Exhibit A.

**(s)    Other Issues**

The parties stipulate to electronic service of discovery.

The parties may seek entry of a stipulated protective order governing use of sensitive materials produced in discovery in this action.

Respectfully submitted,

Dated: March 25, 2026          LAW OFFICES OF DALE K. GALIPO

By    */s/ Benjamin S. Levine*
     DALE K. GALIPO
     BENJAMIN S. LEVINE[1]
     *Attorneys for Plaintiffs*

Dated: March 25, 2026          WESIERSKI & ZUREK LLP

By    */s/ Michelle R. Prescott*
     CHRISTOPHER P. WESIERSKI
     MICHELLE R. PRESCOTT
     *Attorneys for Defendant County of San Bernardino*

---

[1] Pursuant to Local Rule 5-4.3.4, as the filer of this document, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

# EXHIBIT A

JUDGE JESUS B. BERNAL

<u>EXHIBIT A: SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET</u>

| **Case No.** | 5:25-cv-03591-JGB-SP |
|---|---|
| **Case Name** | Armando Huerta, et al. v. County of San Bernardino, et al. |

| Matter | Plaintiff(s)' Request mo/day/year | Defendant(s)' Request mo/day/year | Court's Order |
|---|---|---|---|
| ☑ Jury Trial  *or*  ☐ Court Trial **(Tuesday at 9:00 a.m.)** Length: _5-7___ Days | 8/17/2027 | 8/17/2027 | |
| Final Pretrial Conference [L.R. 16] and Hearing on Motions *In Limine* **(Monday - <u>two (2)</u> weeks before trial date)** | 8/2/2027 | 8/2/2027 | |
| Last Date to Conduct Settlement Conference | 7/2/2027 | 7/2/2027 | |
| Last Date to *Hear* Non-discovery Motions (Monday at 9:00 a.m.) | 6/28/2027 | 6/28/2027 | |
| All Discovery Cut-Off (including hearing all discovery motions) | 5/21/2027 | 5/21/2027 | |
| Expert Disclosure (Rebuttal) | 5/7/2027 | 5/7/2027 | |
| Expert Disclosure (Initial) | 4/16/2027 | 4/16/2027 | |
| Last Date to Amend Pleadings or Add Parties | 9/18/2026 | 9/18/2026 | |

ADR [L.R. 16-15] Settlement Choice:

☑ Attorney Settlement Officer Panel

☐ Private Mediation

☐ Magistrate Judge