# EXHIBIT A
# (First Amended Complaint – Redline)

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO HUERTA, individually and as successor-in-interest to Decedent, Roman Huerta; and JESSICA DURAN, individually and as successor-in-interest to Decedent, Roman Huerta,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; JONATHAN ORTEGA; TYLER WHITCOMB; TYLER RAGLAND; JONATHAN RAMSTAD; THE KPC GROUP D/B/A KPC HEALTH; VICTOR VALLEY GLOBAL MEDICAL CENTER; ARTURO ALVAREZ; DARIYUS JACKSON; and DOES 1-6 through 10, inclusive,<br><br>        Defendants. | Case No. 5:25-cv-03591-JGB-SP<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)<br>2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)<br>3. First and Fourteenth Amendments, Interference with Familial Relationship (42 U.S.C. § 1983)<br>4. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)<br>5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)<br>6. Municipal Liability, Ratification (42 U.S.C. § 1983)<br>7. Battery (Wrongful Death and Survival)<br>8. Negligence (Wrongful Death and Survival)<br>9. Violation of Bane Act (Cal. Civil Code §52.1)<br><br>**DEMAND FOR JURY TRIAL** |

1

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiffs ARMANDO HUERTA, individually and as successor-in-interest to Decedent, Roman Huerta, and JESSICA DURAN, individually and as successor-in-interest to Decedent, Roman Huerta, for their Complaint against Defendants COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, JONATHAN ORTEGA, TYLER WHITCOMB, TYLER RAGLAND, JONATHAN RAMSTAD, THE KPC GROUP D/B/A KPC HEALTH, VICTOR VALLEY GLOBAL MEDICAL CENTER, ARTURO ALVAREZ, DARIYUS JACKSON, and DOES 16 through 10, inclusive (collectively, "Defendants"), hereby allege as follows:

**INTRODUCTION**

1.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the death of Plaintiffs' son, Roman Huerta, while in the custody of the San Bernardino Sheriff's Department on February 24, 2025.

2.     Plaintiffs allege that the death of Roman Huerta was a result of Defendants DOE DEPUTIES' use of excessive force, their failure to timely provide reasonable medical care to Roman Huerta despite his serious medical condition after being subjected to such excessive force and while in Defendants' custody, Defendants' deliberate indifference to Roman Huerta's constitutional rights, and Defendants' negligence.

3.     The policies and customs behind uses of force against civilians such as Roman Huerta during detentions and arrests, and the failure to de-escalate the interaction and utilize less intrusive measures are fundamentally unconstitutional and have violated the civil rights of residents of the COUNTY, such as Plaintiffs and Roman Huerta. Accordingly, Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the death of Roman Huerta, and to challenge the unconstitutional policies and practices of the COUNTY.

FIRST AMENDED COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and because, on information and belief, all Defendants reside in this district.

## PARTIES

6.      At all relevant times, Roman Huerta was an individual residing in the County of San Bernardino, California.

7.      Plaintiff ARMANDO HUERTA is an individual residing in the County of San Bernardino, California and is the natural father of Roman Huerta. ARMANDO HUERTA sues in his individual capacity as the father of Roman Huerta and a representative capacity as successor-in-interest to Roman Huerta pursuant to California Code of Civil Procedure § 377.60. ARMANDO HUERTA seeks both survival and wrongful death damages under federal and state law.

8.      Plaintiff JESSICA DURAN is an individual residing in the County of San Bernardino, California and is the natural mother of Roman Huerta. JESSICA DURAN sues in her individual capacity as the mother of Roman Huerta and a representative capacity as successor-in-interest to Roman Huerta pursuant to California Code of Civil Procedure § 377.60. JESSICA DURAN seeks both survival and wrongful death damages under federal and state law.

9.      At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State

FIRST AMENDED COMPLAINT FOR DAMAGES

of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino Sheriff's Department ("SBSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of some or all of Defendant DOES 1-10.

10.    Defendant CORRIN CASSIDY ("CASSIDY") is a sheriff's deputy for the COUNTY working for the SBSD at the time of this incident. At all relevant times, CASSIDY was acting under color of law within the course and scope of her duties and employment as a deputy for the SBSD, and was acting with the complete authority and ratification of her principal, Defendant COUNTY.

11.    Defendant JONATHAN ORTEGA ("ORTEGA") is a sheriff's deputy for the COUNTY working for the SBSD at the time of this incident. At all relevant times, ORTEGA was acting under color of law within the course and scope of his duties and employment as a deputy for the SBSD, and was acting with the complete authority and ratification of his principal, Defendant COUNTY.

12.    Defendant TYLER WHITCOMB ("WHITCOMB") is a sheriff's deputy for the COUNTY working for the SBSD at the time of this incident. At all relevant times, WHITCOMB was acting under color of law within the course and scope of his duties and employment as a deputy for the SBSD, and was acting with the complete authority and ratification of his principal, Defendant COUNTY.

13.    Defendant TYLER RAGLAND ("RAGLAND") is a sheriff's deputy for the COUNTY working for the SBSD at the time of this incident. At all relevant times, RAGLAND was acting under color of law within the course and scope of his duties and employment as a deputy for the SBSD, and was acting with the complete

**FIRST AMENDED COMPLAINT FOR DAMAGES**

authority and ratification of his principal, Defendant COUNTY.

14.    Defendant JONATHAN RAMSTAD ("RAMSTAD") is a sheriff's deputy for the COUNTY working for the SBSD at the time of this incident. At all relevant times, RAMSTAD was acting under color of law within the course and scope of his duties and employment as a deputy for the SBSD, and was acting with the complete authority and ratification of his principal, Defendant COUNTY.

15.    Defendant THE KPC GROUP D/B/A KPC HEALTH ("KPC") is a business entity, of form unknown, that owns and operates hospitals in Southern California, with its principal place of business in the State of California.

16.    Defendant VICTOR VALLEY GLOBAL MEDICAL CENTER ("VVGMC") is a hospital in Victorville, California, that on information and belief is owned and operated by KPC.

17.    Defendant ARTURO ALVAREZ ("ALVAREZ") is a public safety officer working for KPC and VVGMC at the time of this incident. At all relevant times, ALVAREZ was acting within the course and scope of his duties and employment as a public safety officer for KPC and VVGMC, and was actin with the complete authority and ratification of his principals, Defendants KPC and VVGMC.

18.    Defendant DARIYUS JACKSON ("JACKSON") is a public safety officer working for KPC and VVGMC at the time of this incident. At all relevant times, JACKSON was acting within the course and scope of his duties and employment as a public safety officer for KPC and VVGMC, and was actin with the complete authority and ratification of his principals, Defendants KPC and VVGMC.

10.19. Defendants DOES 16-10 are sheriff's deputies for the COUNTY's Sheriff's Department ("DOE DEPUTIES").  At all relevant times, DOE DEPUTIES were acting under color of law within the course and scope of their duties as officers for the Sheriff's Department; and were acting with the complete authority and ratification of their principal, Defendant COUNTY.

11.20. On information and belief, Defendants CASSIDY, ORTEGA,

5

FIRST AMENDED COMPLAINT FOR DAMAGES

WHITCOMB, RAGLAND, RAMSTAD, ALVAREZ, JACKSON, and DOES 1-10 were residents of the County of San Bernardino, California at all relevant times.

21. In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE DEPUTIES were acting on the implied and actual permission and consent of Defendant COUNTY.

22. The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this compliant to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictiously named Defendants is responsible in some manner for the conduct or liabilities alleged herin.

23. Defendants DOES 1-10 are sued in their individual capacities.

24. At all times mentioned herein, each and every Defendant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

25. All of the acts complained of herein by Plaintiffs against Defendants, including DOES 1-10, were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

27. On or about February 24, 2025, Roman Huerta was at a gas station in Victorville, California, when sheriff's deputies for COUNTY, including one or more

6

**FIRST AMENDED COMPLAINT FOR DAMAGES**

of DOE DEPUTIESDefendant CASSIDY, were called to the gas station based on a reported disturbance.

19.28. DOE DEPUTIESDefendant CASSIDY arrived and contacted Mr. Huerta. Outside of the station, when Mr. Huerta moved away from DOE DEPUTIESCASSIDY, one or more of DOE DEPUTIESCASSIDY deployed their her taser against Mr. Huerta. On information and belief, this caused him to suffer neuromuscular incapacitation and fall to the ground, and caused him significant injury.

20.29. On information and belief, Mr. Huerta was not armed with any weapon, did not harm or reasonably appear to be attempting to harm DOE DEPUTIESDefendant CASSIDY or any other person, did not make any verbal threats, had not committed any significant crime, and did not significantly resist DOE DEPUTIESCASSIDY.

30.   On information and belief, prior to deploying the taser against Mr. Huerta, DOE DEPUTIESDefendant CASSIDY did not issue appropriate commands to him or issue any verbal warning that such force would be used.

21.31. On information and belief, around or shortly after Defendant CASSIDY deployed her taser against Mr. Huerta, Defendants ORTEGA, WHITCOMB, and RAGLAND arrived at the scene and assisted CASSIDY in physically restraining Mr. Huerta.

22.32. On information and belief, DOE DEPUTIESDefendants CASSIDY, ORTEGA, WHITCOMB, and RAGLAND did not employ tactics to de-escalate the situation, failed to give Mr. Huerta time and space to understand and accept the presence of the deputies, failed to approach and speak to Mr. Huerta in a non-threatening manner, failed to consider whether Mr. Huerta was able to understand them, and failed to give Mr. Huerta the opportunity to consent to and cooperate with the instructions of the deputies in a manner he could understand.

23.33. On information and belief, DOE DEPUTIESDefendants CASSIDY,

FIRST AMENDED COMPLAINT FOR DAMAGES

ORTEGA, WHITCOMB, and RAGLAND did not provide or summon medical attention for Mr. Huerta upon him being tased and falling to the ground, despite the risk, which DOE DEPUTIESthey knew or reasonably should have known, of this causing cardiac arrest or other significant and potentially deadly medical complications.

24.34.DOE DEPUTIESDefendants CASSIDY, ORTEGA, WHITCOMB, and RAGLAND then forcibly placed Mr. Huerta into a sheriff's vehicle and, on information and belief, struck him and used additional significant force against him prior to and during this process.

25.35.On information and belief, after DOE DEPUTIESthese Defendants tased and used additional force against Mr. Huerta, causing him significant and life-threatening injuries, DOE DEPUTIESthey delayed in obtaining critical medical care for Mr. Huerta for at least several minutes, without any legitimate justification.

26.36.Ultimately, with Mr. Huerta in the sheriff's vehicle, DOE DEPUTIESDefendant RAGLAND transported him to a hospital. On information and belief, DOE DEPUTIESRAGLAND subjected Mr. Huerta to a "rough ride," during which they caused Mr. Huerta further injury by intentionally or negligently driving in an unsafe manner.

27.37.Once at the hospital, on information and belief, DOE DEPUTIESDefendants CASSIDY, RAGLAND, RAMSTAD, ALVAREZ, and JACKSON used additional force against Mr. Huerta prior to or during the process of bringing him inside, including by restraining him in a chest-down position on the hospital floor, and further delayed his access to urgently needed medical attention.

28.38.On information and belief, Mr. Huerta died at the hospital as a result of the injuries he sustained from the above-described uses of force by DOE DEPUTIESDefendants, including the tasing.

29.39.Mr. Huerta was seated in his vehiclewalking outside of the gas station, and subsequently seated in a wheelchair in the entryway to the hospital, and did not

pose an immediate threat to anyone at the time ~~DOE DEPUTIES~~Defendants used the above-described force against him. On information and belief, ~~DOE DEPUTIES~~Defendants had alternate means of neutralizing and/or effectuating the seizure of Mr. Huerta available, including through any of a variety of readily available and less intrusive means or strategies. The force used by ~~the~~ Defendants ~~DOE DEPUTIES,~~ was unnecessary, excessive, and unreasonable under the totality of the circumstances.

~~30.~~40. Mr. Huerta died as a result of his injuries caused by ~~DOE DEPUTIES~~Defendants.

~~31.~~41. Plaintiffs ARMANDO HUERTA and JESSICA DURAN are Mr. Huerta's successors in interest as defined in Section 377.11 of the Califoria Code of Civil Procedure and succeed to Mr. Huerta's interest in this action as the natural father and mother of Mr. Huerta, respectively. At the time of his death, Mr. Huerta was unmarried and had no children.

~~32.~~42. On or around August 19, 2025, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to the applicable sections of the California Government Code. Said claims were denied on August 26, 2025.

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)**

**(Plaintiffs against Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOES ~~1~~6-10)**

~~33.~~43. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

~~34.~~44. The unreasonable uses of force by Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES deprived Mr. Huerta of his right to be secure in his person against unreasonable searches and seizures as

9

**FIRST AMENDED COMPLAINT FOR DAMAGES**

guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35.45. As a result, Mr. Huerta suffered extreme pain and suffering and eventually suffered a loss of life. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral expenses.

36.46. As a result of the conduct of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, they are liable for Mr. Huerta's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

37.47. This use of deadly force was excessive and unreasonable under the circumstances, especially since Mr. Huerta never attempted to physically injure CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES, or anyone else prior to their uses of force against him. Further, Mr. Huerta never verbally threatened anyone and never pointed a weapon at DOE DEPUTIESthese Defendants or anyone else. Mr. Huerta did not pose an immediate threat of harm to anyone at the time of DOE DEPUTIES'these Defendants' uses of force against him. Defendants' actions thus deprived Mr. Huerta of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

38.48. The conduct of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Huerta and therefore warrants the imposition of exemplary and punitive damages as to these Defendants DOE DEPUTIES.

39.49. As a direct and proximate result of the wrongful death of Mr. Huerta, Plaintiffs suffered the loss of love, companionship, comfort, care, assistance,

10

**FIRST AMENDED COMPLAINT FOR DAMAGES**

protection, affection, society, moral support, and guidance of Mr. Huerta. Accordingly, CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

40.50. Plaintiffs also bring this claim as successors-in-interest to the Mr. Huerta and seek both survival and wrongful death damages for the violation of Mr. Huerta's rights.

41.51. Plaintiffs also seek attorney's fees and costs under this claim.

### SECOND CLAIM FOR RELIEF

**Fourth Amendment - Denial of Medical Care (42 U.S.C. § 1983)**

**(Plaintiffs against Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOES 16-10)**

42.52. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

43.53. The denial of medical care by Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES deprived Mr. Huerta of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Huerta under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

44.54. As a result, Mr. Huerta suffered extreme mental and physical pain and eventually suffered a loss of life and earning capacity. Plaintiffs have also been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

45.55. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES knew that failure to provide timely medical treatment to Mr. Huerta could result in further significant injury or the unnecessary

11

FIRST AMENDED COMPLAINT FOR DAMAGES

and wanton infliction of pain, but disregarded that serious medical need, causing Mr. Huerta's death.

46.56. The conduct of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Huerta and therefore warrants the imposition of exemplary and punitive damages as to these Defendants DOE DEPUTIES.

47.57. Plaintiffs also bring this claim as successors-in-interest to the Mr. Huerta and seek both survival and wrongful death damages for the violation of Mr. Huerta's rights.

48.58. Plaintiffs also seek attorney's fees and costs under this claim.

**THIRD CLAIM FOR RELIEF**

**First and Fourteenth Amendments – Interference with Familial Relationship**

**(42 U.S.C. § 1983)**

**(Plaintiffs against Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOES 16-10)**

49.59. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

50.60. Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their son, Mr. Huerta. Plaintiffs also had a cognizable interest under the First Amendment to the United States Constitution to be free from state actions that unreasonably interfere with their familial relationship and association with their son, Mr. Huerta.

51.61. As a result of the excessive force by Defendants CASSIDY, ORTEGA,

12

WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, Mr. Huerta died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with Mr. Huerta.

52.62. The aforementioned actions of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, along with any undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the Mr. Huerta and Plaintiffs and with purpose to harm unrelated to any legitimate law enforcement objective.

53.63. Defendant CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, acting under color of state law, thus violated the First and Fourteenth Amendment rights of Plaintiffs to be free from unwarranted inferference with their familial relationship and right of association with Mr. Huerta.

54.64. As a direct and proximate cause of the actions of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, Plaintiffs have suffered emotionally and have been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

55.65. As a result of the conduct of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, they are liable for Mr. Huerta's and Plaintiffs' injuries because they were integral participants in the denial of due process and free association rights.

56.66. The conduct of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Huerta and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to these Defendants DOE DEPUTIES.

57.67. Plaintiffs bring this claim individually and seek individual and

FIRST AMENDED COMPLAINT FOR DAMAGES

wrongful death damages under this claim for the interference with Plaintiffs' familial relationship and right of association with Mr. Huerta.

58.68. Plaintiffs also seek attorney's fees and costs under this claim.

**FOURTH CLAIM FOR RELIEF**

**Muncipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**(Plaintiffs against Defendant COUNTY)**

59.69. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

60.70. On information and belief, the COUNTY made a formal decision that CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES' killing of Mr. Huerta was found to be "within policy" of the COUNTY's Sheriff's Department protocols, notwithstanding that Mr. Huerta was not an imminent threat to these Defendants DOE DEPUTIES when they used force against him resulting in his death. This manifests a deliberate indifference to the civil rights of the residents of the COUNTY.

61.71. On information and Defendant COUNTY and COUNTY executives ratified, acquiesced, and condoned the fatal use of force against Mr. Huerta by CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES.

62.72. On information and belief, CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, were not disciplined, and were not given additional training, after the killing of Mr. Huerta, which evidences ratification and acquiescence in the killing of Mr. Huerta by CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES.

63.73. On and for some time prior to February 24, 2025, and continuing to the present date, Defendant COUNTY deprived Mr. Huerta and Plaintiffs of the rights and liberties secured to them by the First, Fourth, and Fourteenth Amendments to the

14

FIRST AMENDED COMPLAINT FOR DAMAGES

United States Constitution, because COUNTY and its supervising and managerial employees, acted with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and Mr. Huerta, and of persons in their class, situation and comparable position in particularly, knowingly maintained, enforced, and applied an official recognized custom, policy, and practice of:

    a. Employing and retaining as sheriff's deputies and other personnel, including CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities of abusing their authority and for mistreating citizens by failing to follow written COUNTY Sheriff's Department policies.

    b. Inadequately supervising, training, controlling, assigning, and disciplining COUNTY's sheriff's deputies, and other personnel, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

    c. Failing to adequately train sheriff's deputies, including CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force;

    d. Having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which is also demonstrated by inadequate training regarding these subjects;

    e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining the intentional misconduct of Defendant COUNTY sheriff's deputies, such as CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES;

15

FIRST AMENDED COMPLAINT FOR DAMAGES

f. Failing to discipline COUNTY sheriff's deputies, such as CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, for conduct such as excessive use of force;

g. Ratifying the misconduct of Defendant COUNTY sheriff's deputies, such as CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, for conduct such as excessive use of force;

h. Failing to properly investigate incidents of excessive use of deadly force by Defendant COUNTY sheriff's deputies, such as DOE DEPUTIES.

79. On information and belief, it is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of previous incidents of excessive use of deadly force, and improper denial of medical care, and instead, to officially claim that such incidents are justified and proper.

80. The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies such as CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, to believe that excessive use of deadly force, and improper denial of medical care are permissible and will be permitted by Defendant COUNTY. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES were aware of the policies, customs, and practices of Defendants COUNTY and CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES used excessive force against Mr. Huerta. These policies and customs of the COUNTY were the driving force that caused CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES to kill Mr. Huerta.

81. Other systemic deficiencies, policies, customs, and practices which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the COUNTY sheriff's deputies, such as CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, that Defendant COUNTY was aware of, and has condoned and ratified include:

16

**FIRST AMENDED COMPLAINT FOR DAMAGES**

   a. Preparation of investigative reports designed to vindicate the use of excessive use of force, regardless of whether such force was justified;

   b. Preparation of investigative reports which uncritically rely solely on the word of sheriff's deputies involved in the assault, battery, excessive use of force incidents and which systematically fail to credit testimony by non-police witnesses;

   c. Issuance of public statements exonerating deputies involved in such incidents prior to the completion of investigations of the excessive use of force;

   d. Failure to objectively and independently review investigative reports by responsible superior deputies for accuracy or completeness and acceptance of conclusions which are unwarranted by the evidence of the wrongful shooting, assault, excessive use of deadly force, or which contradict such evidence.

82. By reason of the aforementioned policies and practices of Defendant COUNTY, Mr. Huerta was severely injured and subjected to pain and suffering and lost his life.

83. Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, COUNTY condoned, tolerated and through actions and inactions thereby ratified such policies. COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Huerta, and other individuals similarly situated.

84. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY acted with an intentional,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

reckless, and callous disregard for the rights and the life of Mr. Huerta, and Mr. Huerta's and Plaintiffs' constitutional rights.

85. The following are only a few examples of cases where County of San Bernardino sheriff's deputies used excessive deadly force and were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY routinely ratifies such behavior, fails to properly train its deputies, and maintains a practice of allowing such behavior:

a. In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

b. In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

c. In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or

18
**FIRST AMENDED COMPLAINT FOR DAMAGES**

vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

d. In *Arrona, et al. v. County of San Bernardino et al.*, Case No. 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

e. In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

f. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

g. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's

19

**FIRST AMENDED COMPLAINT FOR DAMAGES**

deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy.

i.  In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable.  In 2018, the parties settled the case for a seven-figure settlement.

j.  In *Young v. County of San Bernardino*, Case No. 5:15-cv-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

k.  Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 U.S.C. § 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

86.  Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY were affirmatively linked to

20

**FIRST AMENDED COMPLAINT FOR DAMAGES**

and were significantly influential forces behind the injuries of Mr. Huerta and Plaintiffs.

87.    By reason of the aforementioned acts and omissions of Defendant COUNTY, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support of Mr. Huerta.

88.    Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

89.    Plaintiffs bring this claim individually and as successors in interest to Mr. Huerta and seek both survival and wrongful death damages under this claim. Plaintiffs are also claiming funeral expenses.

90.    Plaintiffs also seek statutory attorney fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

### (Plaintiffs against Defendant COUNTY)

91.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

92.    Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES acted under color of law. The acts of said Defendants deprived Mr. Huerta and Plaintiffs of their particular rights under the United States Constitution.

93.    The training policies of Defendant COUNTY were not adequate to train its sheriff's deputies to handle the usual and recurring situations with which they must deal.

94.    Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

95.    The negligent and unjustified use of force by the said Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE

FIRST AMENDED COMPLAINT FOR DAMAGES

DEPUTIES was a result of the negligent training by the Defendant COUNTY, who failed to train COUNTY deputies as to proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. COUNTY was responsible for the training of COUNTY deputies to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

96.     COUNTY negligently failed to train COUNTY deputies to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of COUNTY were not adequate to train its sheriff's deputies to handle the usual and recurring situations with residents that said Defendants have contact with.

97.     The training policies of the COUNTY were deficient in the following ways:

    a. The COUNTY failed to properly train COUNTY sheriff's deputies, so that deputies do not escalate their interactions with members of the public and do not overreact and resort to use of force when the use of force was not necessary.

    b. The COUNTY failed to properly train COUNTY sheriff's deputies in proper police tactics, such as situational awareness so that deputies do not utilize negligent tactics. Because of this lack of proper training by the COUNTY, CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES did not use proper police tactics in handling of the contact with Mr. Huerta, and instead used defective police tactics, including the lack of a situational awareness by the said

FIRST AMENDED COMPLAINT FOR DAMAGES

Defendants. These defective tactics resulted in the death of Mr. Huerta.

c. The COUNTY failed to properly train COUNTY sheriff's deputies in the use of effective communication prior to using force. Because of the lack of proper training by the COUNTY, CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES did not use effective communication prior to and during the use of force against Mr. Huerta. The ineffective communication of information by said Defendants prior to, and during the incident, resulted in the death of Mr. Huerta.

98.    The failure of Defendant COUNTY to provide adequate training caused the deprivation of Mr. Huerta's and Plaintiffs' rights by Defendants; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of the Mr. Huerta's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

99.    The following are only a few examples of continued conduct by sheriff's deputies working for the COUNTY, which indicate the COUNTY's failure to properly train its sheriff's deputies:

a. In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

b. In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies

23

**FIRST AMENDED COMPLAINT FOR DAMAGES**

intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

c.  In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

d.  In *Arrona, et al. v. County of San Bernardino et al.*, Case No. 5:21- cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case recently settled for an undisclosed amount.

e.  In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties recently settled for an undisclosed amount.

f.  In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police

**FIRST AMENDED COMPLAINT FOR DAMAGES**

reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

g. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

h. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy.

i. In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable.  In 2018, the parties settled the case for a seven-figure settlement.

j. In *Young v. County of San Bernardino*, Case No. 5:15-cv-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

k. Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 U.S.C. § 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith

25

<span style="color:red"><u>FIRST AMENDED</u></span> <b>COMPLAINT FOR DAMAGES</b>

filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

100. By reason of the aforementioned acts and omissions of Defendants, Plaintiffs were caused to incur funeral and related burial expenses.

101. By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Huerta.

102. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

103. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival and wrongful death damages under this claim.

104. Plaintiffs also seek statutory attorney fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

### (Plaintiffs against Defendant COUNTY)

105. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

106. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES acted under color of law.

26

FIRST AMENDED COMPLAINT FOR DAMAGES

107. The acts of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES deprived Mr. Huerta and Plaintiffs of their particular rights under the United States Constitution.

108. On information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, ratified CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES' acts and the bases for them. The final policymaker knew of and specifically approved of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES' acts.

109. On information and belief, a final policymaker has determined that the acts of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES were "within policy."

110. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. Huerta. The aforementioned acts and omissions also caused Mr. Huerta's pain and suffering, loss of enjoyment of life, and death.

111. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

112. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs are also claiming funeral expenses.

113. Plaintiffs also seek attorney's fees and costs under this claim.

113. ///

27

FIRST AMENDED COMPLAINT FOR DAMAGES

**SEVENTH CLAIM FOR RELIEF**

**Battery (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**(Plaintiffs against all Defendants)**

114.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

115.    Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES, while working as sheriff's deputies for the COUNTY and acting within the course and scope of their duties, as well as Defendants ALVAREZ and JACKSON, while working as public safety officers for KPC and VVGMC, intentionally used force against Mr. Huerta, including tasing him and forcibly restraining him on the ground. These Defendants DOE DEPUTIES had no legal justification for using such force against Mr. Huerta, and said Defendants' uses of force while carrying out their duties were unreasonable, especially since Mr. Huerta was not an imminent threat to DOE DEPUTIES these Defendants or anyone else. The uses of force were also unreasonable because there were less intrusive options readily available.

116.    As a result of the actions of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES, ALVAREZ, and JACKSON, Mr. Huerta suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from his injuries and lost learning capacity.

117.    COUNTY is vicariously liable for the wrongful acts of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

28

FIRST AMENDED COMPLAINT FOR DAMAGES

117.118.    KPC and VVGMC are vicariously liable for the wrongful acts of ALVAREZ and JACKSON pursuant to sections 2295 *et seq.* of the California Civil Code, which provides that an employer is liable for the injuries caused by its employees within the scope of the employment.

118.119.    The conduct of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES, ALVAREZ, and JACKSON was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Huerta, entitling Plaintiffs, individually and/or as successor-in-interest to Mr. Huerta, to an award of exemplary and punitive damages. Plaintiffs are also claiming funeral expenses.

119.120.    Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**(Plaintiffs against all Defendants)**

120.121.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

121.122.    The actions and inactions of Defendants were negligent, including but not limited to:

    a.  The failure to properly and adequately train employees including CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES, ALVAREZ, and JACKSON with regard to the use of force, including deadly force;

    b.  The failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force, against Mr. Huerta;

FIRST AMENDED COMPLAINT FOR DAMAGES

c. The negligent tactics and handling of the situation with Mr. Huerta, including pre-force negligence;

d. The negligent detention, arrest, and use of force, including deadly force, against Mr. Huerta;

e. The negligent failure to provide and or summon prompt medical care to Mr. Huerta;

f. The failure to give a verbal warning or appropriate commands prior to using force;

g. And failure to properly train and supervise employees, including CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES, ALVAREZ, and JACKSON.

122.123. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Huerta suffered extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

124. COUNTY is vicariously liable for the wrongful acts of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

123.125. KPC and VVGMC are vicariously liable for the wrongful acts of ALVAREZ and JACKSON pursuant to sections 2295 *et seq.* of the California Civil Code, which provides that an employer is liable for the injuries caused by its employees within the scope of the employment.

FIRST AMENDED COMPLAINT FOR DAMAGES

124.126.    Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

## NINTH CLAIM FOR RELIEF

**Violation of Bane Act (Cal. Civil Code § 52.1)**

**(Plaintiffs against all Defendants COUNTY, CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOES 6-10)**

125.127.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

126.128.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (including by the use of unconstitutionally excessive force).

127.129.    Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

128.130.    The Bane Act, the California Constitution and California common law prohibit the use of excessive force, wrongful detention and arrest, and denial of medical care by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES violated Mr. Huerta's and Plaintiffs' constitutional rights by using

31

excessive force against Mr. Huerta, denying Mr. Huerta medical care, and interfering with the relationships between Plaintiffs and Mr. Huerta, all of which acts were done intentionally and with a reckless disregard for Mr. Huerta's and Plaintiffs' constitutional rights.

131. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES' use of deadly force was excessive and unreasonable under the circumstances. Further, the involved deputies did not give a verbal warning or adequate commands prior to fatally using force against Mr. Huerta, despite being feasible to do so. The conduct of Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Huerta and Plaintiffs.

132. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES intentionally violated Mr. Huerta's constitutional rights by using excessive force against Mr. Huerta. Further, these acts by CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES demonstrate that they had a reckless disregard for Mr. Huerta's constitutional rights.

133. At the time of the use of force against Mr. Huerta, Mr. Huerta did not pose an immediate threat of death or serious bodily injury and never verbally threatened anyone prior to the use of force. There is direct and circumstantial evidence that CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES intentionally violated Mr. Huerta's rights by fatally subjecting him to force.

134. Defendants CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, AND DOE DEPUTIES, while working as sheriff's deputies for the COUNTY, and acting within the course and cope of their duties, interfered with or attempted to interfere with the rights of Mr. Huerta to be free from excessive force

32

**FIRST AMENDED COMPLAINT FOR DAMAGES**

and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

133.135.    Mr. Huerta was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Huerta, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also claim funeral and burial expenses.

134.136.    The conduct of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES was a substantial factor in causing the harm, losses, injuries and damages of Mr. Huerta and Plaintiffs.

135.137.    Defendant COUNTY is vicariously liable for the wrongful acts of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, and DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

136.138.    The conduct of CASSIDY, ORTEGA, WHITCOMB, RAGLAND, RAMSTAD, DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Huerta entitling Plaintiffs to an award of exemplary and punitive damages.

137.139.    Plaintiffs bring this claim individually and as successors-in-interest to Mr. Huerta and seek compensatory and survival damages, including for his pre-death pain and suffering, under this claim.

138.140.    Plaintiffs also seek costs and attorney fees under this claim.

/ / /

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ARMANDO HUERTA and JESSICA DURAN request entry of judgment in their favor and against Defendants COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, JONATHAN ORTEGA, TYLER WHITCOMB, JONATHAN RAGLAND, JONATHAN RAMSTAD, THE KPC GROUP D/B/A KPC HEALTH, VICTOR VALLEY GLOBAL MEDICAL CENTER, ARTURO ALVAREZ, DARIYUS JACKSON, and DOES 1 6-10, inclusive, as follows:

A.   For compensatory damages, including both survival and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.   For other general damages in an amount according to proof at trial;

C.   For other non-economic damages in an amount according to proof at trial;

D.   For other special damages in an amount according to proof at trial;

E.   For treble damages pursuant to Cal. Civ. Code § 52.1;

F.   For punitive damages against the individual defendants in an amount to be proven at trial;

G.   Attorney's fees pursuant to 42 U.S.C. § 1988;

H.   Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(i);

I.   For interest;

J.   For reasonable costs of this suit; and

K.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED: July 13, 2026          **LAW OFFICES OF DALE K. GALIPO**

By: _____
DALE K. GALIPO
BENJAMIN S. LEVINE
Attorneys for Plaintiffs

35

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiffs named herein hereby demand a trial by jury.


DATED: July 13, 2026              **LAW OFFICES OF DALE K. GALIPO**



                        By: _____
                              DALE K. GALIPO
                              BENJAMIN S. LEVINE
                              Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES